UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELMSFORD APARTMENT ASSOCIATES, LLC
36 APARTMENT ASSOCIATES, LLC, and
66 APARTMENT ASSOCIATES, J.V.,

                        Plaintiffs,

      - against -

ANDREW CUOMO, as Governor of the State
of New York,

                        Defendant.

COMPLAINT

Plaintiffs, by and through their undersigned counsel, allege as follows, upon information and belief as against the named Defendant herein:

**NATURE OF THE ACTION**

1. This action challenges the implementation of the Defendant's Executive Order 202.28, (the "Order") entitled "Continuing Temporary Suspension and Modification of Laws Related to the Disaster Emergency," issued by the Defendant on May 7, 2020, pursuant to New York Executive Law §29-a. The Order, among other things, contained provisions that: (a) Prohibits landlords from initiating or continuing any residential eviction proceeding based upon non-payment of rent, through the date that is 60 days counting from June 20, 2020; and, (b) Requires landlords to apply security deposits to unpaid rent, upon the sole request of the tenant;

2. As set forth, below this action seeks to nullify the Order as violative of the United

States Constitution, on the grounds that it improperly intefers with Plaintiffs' contract and due process rights and constitutes an improper taking of Plaintiffs' property.

## THE PARTIES

3. Plaintiff Elmsford Apartment Associates, LLC ("Elmsford") is a New York limited liability company, having its principal place of business in the State of New York, County of Westchester.

4. Elmsford is the fee owner of the residential rental properties located at 7 Paulding Street and 37 North Hillside Avenue, Elmsford, New York, containing a combined 29 rental units, which it rents to residential tenants.

5. Plaintiff 36 Apartment Associates, LLC ("36") is a New York limited liability company, having its principal place of business in the State of New York, County of Westchester.

6. 36 is the fee owner of the residential rental properties located at 344 Irving Avenue, 350 Irving Avenue 171 Rectory Street, 42 Arnett Street and 58 Prospect Street, Port Chester, New York, containing a combined 36 rental units, which it rents to residential tenants.

7. Plaintiff 66 Apartment Associates, J.V. ("66"), is a New York, partnership, having its principal place of business in the State of New York, County of Westchester.

8. 66 is the fee owner of 45 condominium units in Park Crest West Condominium, located at 66 Caryl Avenue, Yonkers, New York, which it rents to residential tenants.

9. Defendant is the 56th Governor of the State of New York, having been elected to his third term in 2018.

## JURISDICTION

10. The Court has subject matter of this action and the original Complaint brought herein under Article III, Clause 2; the Supremacy Clause of the United States Constitution, Art. VI, Clause 2; the Contracts Clause, Art. 1, §10; the Takings Clause and Due Process provisions of the Fourteenth Amendment, and 28 U.S.C. 1331 and 1343 (a)(3). Plaintiffs seek declaratory and equitable relief under 28 U.S.C. 2201 and 42 U.S.C. 1983, and the awarding of counsel fees pursuant to 42 U.S.C. 1988 (b).

## VENUE

11. Venue is proper in this Court pursuant to 28 U.S.C. 1391, inasmuch as a substantial part of the events giving rise to claims set forth in the original Complaint and herein have already, and will continue, to occur in this district, and because the properties that are the subject of this action and herein are located in the district, being in Westchester County.

## STANDING

12. Plaintiffs are New York entities and the owners of property located within the State of New York. Plaintiffs are "landlords" as that term is used in the Order, whose contractual and ownership rights in their respective properties are directly impacted by the Order.

## BACKGROUND AND FACTS

### A. The Executive Order Subject to This Action

13. On May 7, 2020, the Defendant issued Executive Order No. 202.28 (the "Order"), entitled "Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency."

14. The Order was the then-latest in a series of Executive Orders issued by the Defendant which were intended to restrict activities by the citizens of the State of New York, ostensibly to

control the spread of the Covid-19 (Coronovirus) epidemic in the State.

15. Per its express terms, the Order: (a) prohibit landlords, including the Plaintiff herein, from initiating or enforcing eviction proceedings against residential tenants based upon non-payment of rent, through the date that is 60 days when counted from June 20, 2020; and, (b) obligates landlords, including the Plaintiff herein, to apply contractually created security deposits to the payment of rent during the term of executory residential leases.

### *i.* The Provisions Related to Eviction Proceedings

16. The Order states, in relevant part:

> There shall be no initiation of a proceeding or enforcement of either an eviction of any residential or commercial tenant, for nonpayment of rent . . . rented by someone that is eligible for unemployment insurance or benefits under state or federal law or otherwise facing financial hardship due to the COVID-19 pandemic for a period of sixty days beginning on June 20, 2020.

17. The Order effectively precludes the Plaintiffs from commencing any eviction proceeding against any residential tenant based upon non-payment of rent through August 19, 2020.

18. In so doing, the Order has given *carte blanche* to tenants to withhold rent without immediate repercussion. Plaintiffs and all similarly situated landlords are precluded from asserting their rights and obtaining relief to protect their property, all the while remaining obligated to pay all of their own carrying costs and other expenses, including taxes to the various governmental divisions of New York State.

### *ii.* The Provisions Related to Security Deposits

19. The Order states, in relevant part:

>Sections 7-103, 7-107 and 7-108 of the General Obligations Law to the extent necessary to provide that:
>
>Landlords and tenants or licensees of residential properties may, upon the consent of the tenant or licensee, enter into a written agreement by which the security deposit and any interest accrued thereof, shall be used to pay rent that is in arrears or will become due. If the amount of the deposit represents less than a full month rent payment, this consent does not constitute a waiver of the remaining rent due and owing for that month. Execution in counterpart by email will constitute sufficient execution for consent;
>
>Landlords shall provide such relief to tenants or licensees who so request it that are eligible for unemployment insurance or benefits under state or federal law or are otherwise facing financial hardship due to the COVID-19 pandemic;
>
>It shall be at the tenant or licensee's option to enter into such an agreement and landlords shall not harass, threaten or engage in any harmful act to compel such agreement;
>
>Any security deposit used as a payment of rent shall be replenished by the tenant or licensee, to be paid at the rate of 1/12 the amount used as rent per month. The payments to replenish the security deposit shall become due and owing no less than 90 days from the date of the usage of the security deposit as rent. The tenant or licensee may, at their sole option, retain insurance that provides relief for the landlord in lieu of the monthly security deposit replenishment, which the landlord, must accept such insurance as replenishment.

20. General Obligations Law 7-103, referenced in the Order, provides, *inter alia*, that security deposits provided by tenants shall remain the property of the tenant, which funds are held by the landlord in escrow for the benefit of the tenant; that the landlord disclose the name and address of the banking institution into which the security funds were deposited; that the deposit be placed into an interest bearing account where the leased space is located in a building that contains at least six residential units; that the tenant receive the full interest on the deposit that was earned at the time of lease termination; that any provision of a lease that would waive any right of the tenant is deemed void; and, that the term "real property" is deemed to include

lands, tenements and hereditaments.

21. General Obligations Law 7-107, referenced in the Order, provides, *inter alia,* that it applies to tenancies subject to the New York City Rent Stabilization Law of 1969 or the Emergency Tenant Protection Act of 1974; that a successor landlord remains liable to the tenant for the full amount of the security deposit and interest earned thereupon regardless of whether the landlord actually receives such funds from its predecessor-in-interest; that a Receiver be liable only for funds actually received; and that any provision of a lease by which a tenant would waive any such rights is void.

22. General Obligations Law 7-108, referenced in the Order, provides, *inter alia,* that it applies to all tenancies not otherwise covered by section 7-107; that for all such tenancies, except those specifically excluded therein, which exclusions do not cover the Plaintiffs' tenants, no landlord may collect more than the equivalent of one (1) month's rent as a security deposit; the entirety of the security deposit shall be returned to the tenant except as to the costs incurred by the landlord with regards to non-payment of rent and damages caused by the tenant above normal wear and tear or caused by a prior tenant; that the tenant shall have a pre-occupancy right of inspection and a written statement of defects existing on the premises at that time; a procedure for inspection of the premises prior to the expiration of the tenancy; disclosure to the tenant as regards amounts retained of the security deposit; that in any action related thereto, the landlord is obligated to prove its entitlement to retain such portions of the deposit; that any person who violates the section to subject to damages; that successor landlords be deemed to have knowledge of certain, defined deposits; that successor landlords notify the tenant in the event no record of any deposit is had; that the grantee be entitled to the establishment of an escrow account in such

event, equal to one month's rent; that a Receiver be liable only for funds actually received; and that any provision of a lease by which a tenant would waive any such rights is void.

### B. The Statutory Basis for the Executive Order

23. The Order, as related to this action, issued on May 7, 2020, pursuant to New York Executive Law §29-a, and upon no other statutory basis.

### C. Statement of Facts Common to All Plaintiffs and Causes of Action

24. The leases entered into by each Plaintiff is for a period of one-year, none of the properties being subject to any rent regulations that might otherwise have required that leases be renewed as, a matter if right, by the tenants.

25. The rents received by the Plaintiffs are their sole source of income.

26. By written leases had between each Plaintiff and their respective tenants, each tenant tendered to their respective landlord a security deposit, equal to one month's rent as security in favor of the landlord in the event that the tenant caused unrepaired damages to their respective apartment or owed rent arrears, as of the date that legal possession of the subject apartment was returned to the landlord.

27. Said deposits were received by the Plaintiffs and deposited into a banking institution located within the State of New York, as required by law.

28. Pursuant to the law of the State of New York, the deposits remained the property of the respective tenants, and during the tenancy could not be utilized by either party for any purpose, unless both landlord and tenant agreed.

29. Each of the Plaintiffs is owed rent by various tenants to which they had entered into residential leases for their properties for the period of time both preceding and subsequent to the

May 7, 2020 issuance of the Order.

30. Each of the Plaintiffs has had least one tenant that has directed that the tenant's security deposit be applied to rent arrears owed by that tenant.

31. Each of the Plaintiffs desires to protect its property, while at the same time giving reasonable opportunity for their tenants to maintain their tenancies, by commencing a residential non-payment proceeding before a Court of competent jurisdiction.

32. Each of the Plaintiffs desires to maintain the protections afforded to them by the security deposits provided for in their various leases, to be used to compensate the Plaintiffs as a fund from which to pay for damages caused by tenants.

33. The Order abrogates the Plaintiffs' contractual rights in that it permits the tenants to unilaterally violate the terms of his/her Lease, without Plaintiffs' consent, and requires that, upon the tenant's request, the Plaintiffs must apply the deposit to rent arrears.

34. The Order thus removes the contractual protection set forth in the leases by removing the security deposit as the primary source from which to compensate Plaintiffs for damages that may be caused to the subject premises by the tenants.

35. The Order further abrogates Plaintiffs' contractual rights by permitting the tenant to replenish the security deposit in one-twelfth increments and is additionally insufficient to protect the Plaintiffs, as such replenishment requirement does not even commence until 90 days after the application of the deposit to the rent arrears.

36. The Order further abrogates the Plaintiffs' contractual rights regarding replenishment of the security deposit, as where the lease is for a period of less than one-year, and if such lease is not renewed, or should the tenant prematurely vacate or be evicted from the premises, Plaintiffs

will not recover the full amount of the deposit.

37. This provision of the Order additional abrogates Plaintiffs' rights, as upon the default by the tenant in making timely, monthly replenishment payments, Plaintiffs' only option would be to commence a hold-over eviction proceeding against the tenant, which will be subject to the lengthy delays and costs associated with such proceedings, with the result that the costs to the Plaintiffs will almost always exceed the amount of the deposit.

38. The provision of the Order that permits tenants to obtain "insurance" does not protect the Plaintiffs, inasmuch as the costs, time, expenses and fees, associated with making claims against such insurance will at the least significantly diminish the value of the amount so insured, which amount would also be diminished by the amount of any legal costs associated with any action to recover upon such "insurance." Additionally, the delays associated with such claims would require the Plaintiffs to use other funds to make such repairs in order to install a new tenant, which could otherwise be used for the upkeep of the premise or taken as profit.

39. All monies which are expended by the Plaintiffs to either seek enforcement from the tenants or to pursue a claim against such "insurance" necessarily and improperly diminishes the Plaintiffs' income.

40. Ostensibly, the Order was intended to protect tenants unable to pay their rent from being evicted. This goal could have been achieved by less intrusive means, including, but not limited to: (a) Permitting the Courts to hear each case on its own merits and fashion relief appropriate to the specific positions of the affected landlords and tenants, thereby protecting tenants from immediate eviction but also providing protection to landlords from excessive periods of non-payment; and/or, (b) Providing tenants with the means to pay rent, without

requiring landlords to bear the burden and threat of significant non-payment of rent.

41. The Order issued on May 7, 2020, at a time when a prior granted moratorium on evictions was already in place and would not expired of its own terms until June 6, 2020.

42. The Order was thereby issued so as to inform tenants of the plan of the State of New York to continue the moratorium against evictions through at least August 19, and in so doing give tenants a present sense that they were not bound to pay their rent at least through August 19, regardless of their real ability to pay rent on an ongoing basis.

### D. The Order Violates New York Law and Plaintiffs' Rights

43. The Order violates Plaintiffs' rights in that: (a) In violation of subdivision (2)(a), the Order restricts Plaintiffs' rights for a period in excess of (30) days; (b) In violation of subdivision (2)(b), the Order is not "reasonably necessary to the disaster efforts," in that its provisions improperly restrict landlords' rights, while the ostensible purpose of protecting tenants from eviction could be obtained through significantly less restrictive methods; (c) In violation of subdivision (2)(c), the Order, as regards security deposits did not "suspend" any statute, but, instead, re-wrote the statutes and contractual rights of landlords and tenants; (d) In violation of subdivision (2)(d), the Order is not limited to any definitive class of person needing assistance, but applies to all tenancies, regardless of circumstances; (e) In violation of subdivision (2)(e), the Order restricts landlords' rights beyond the "minimum deviation" that would be necessary to obtain the desired results; (f) In violation of subdivision (2)(f), no specialists have been assigned to assist in the resolution of landlord-tenant issues; and, (g) the Order violates the doctrine of separation of powers, in that the Order sought to create legislation and limits Plaintiffs' access to the Courts.

44. The effect of each violation, set forth, above, violates the Plaintiffs' constitutionally protected rights.

### AS AND FOR A FIRST CAUSE OF ACTION BASED UPON THE CONTRACTS CLAUSE, CONSTITUTION ART. 1, §10, AND FOR RELIEF UNDER 28 U.S.C. 2201 and 42 U.S.C. 1983, AND THE AWARDING OF COUNSEL FEES PURSUANT TO 42 U.S.C. 1988 (b)

45. The Order violates Plaintiffs' constitutionally protected right against takings, in that it: (a) impermissibly permits the tenant to use the security deposit to pay rent and restricts the Plaintiffs' rights as regards the replenishment thereof; (b) impermissibly prohibits the Plaintiffs from protecting their rights by commencement of an eviction proceeding to either collect the rent or recover possession of the subject premises; (c) creates a palpable and immediate threat to Plaintiffs' ability to maintain their ownership interest in their properties and comply with Plaintiffs' own contractual and statutory obligations by threatening the ongoing income stream of rent; (d) deprives the Plaintiffs of the full value of their property, in that the threat to a complete rental stream decreases the value thereof; and, (e) is implemented in a manner that is not compliant with the provisions of law.

46. The ostensible goal of the Order, being the protection of tenants from eviction could have been achieved by other means, including, but not limited to: (a) Permitting the Judges of the New York Courts to fashion resolutions that provide for the payment of arrears by tenants over a period of time commensurate with the circumstances, while at the same time protecting landlords as to on-going rent; and/or, (b) Arranging for the payment of rent directly to landlords in place of a part of the stimulus payments and other loan programs presented available and

which could become available to assist tenants while at the same time not prejudicing the rights of landlords.

47. By virtue of the above and the violation of Plaintiffs' constitutional rights, Plaintiffs have and will yet suffer irreparable harm, entitling Plaintiffs to declaratory and injunctive relief and damages including an award of counsel fees.

### AS AND FOR A SECOND CAUSE OF ACTION BASED UPON THE TAKINGS CLAUSE OF, AND DEPRIVATION OF THE PLAINTIFFS DUE PROCESS RIGHTS CONTAINED IN, THE FOURTEENTH AMENDMENT AND FOR RELIEF UNDER 28 U.S.C. 2201 and 42 U.S.C. 1983, AND THE AWARDING OF COUNSEL FEES PURSUANT TO 42 U.S.C. 1988 (b)

48. The Order creates a procedural taking, in that the Order limits the Plaintiffs' rights over their own properties.

49. The Order creates an actual taking, in that by obviating Plaintiffs' rights, the effect of the Order is to continue an actual, state-sponsored occupancy of the Plaintiffs' properties.

50. As drafting and by virtue of its terms, the Order places upon the Plaintiffs and all similarly situated landlords the burden of protecting tenants from eviction during the Covid-19 pandemic, a burden that should rightly be borne by society, as a whole.

51. The Order violates Plaintiffs' constitutionally protected right against takings and its right to due process of law, in that it: (a) impermissibly permits the tenant to use the security deposit to pay rent and restricts the Plaintiffs' rights as regards the replenishment thereof; (b) impermissibly prohibits the Plaintiffs from protecting their rights by commencement of an eviction proceeding to either collect the rent or recover possession of the subject premises; (c) creates a palpable and immediate threat to Plaintiffs' ability to maintain their ownership interest in their properties and comply with Plaintiffs' own contractual and statutory obligations by

threatening the ongoing income stream of rent; (d) deprives the Plaintiffs of the full value of their property, in that the threat to a complete rental stream decreases the value thereof; and, (e) is implemented in a manner that is not compliant with the provisions of law.

52. By virtue of the above and the violation of Plaintiffs' constitutional rights, Plaintiffs have and will yet suffer irreparable harm, entitling Plaintiffs to declaratory and injunctive relief and damages, including an award of counsel fees.

WHEREFORE, the Plaintiffs respectfully demand Judgment herein:

A. On the First Cause of Action, declaring Defendant violated the Plaintiffs' rights under the United States Constitution, and granting such additional and further relief as contained in the constitutional and statutory provisions cited therein;

B. On the Second Cause of Action, declaring Defendant violated the Plaintiffs' rights under the United States Constitution, and granting such additional and further relief as contained in the constitutional and statutory provisions cited therein;

C. Preliminarily enjoining the implementation and enforcement of the Defendant's Executive Order 202.28;

D. Awarding Plaintiffs at least nominal damages;

E. Awarding Plaintiffs their reasonable counsel fees, coss and expenses pursuant to 42 U.S.C. 1988 and other applicable law; and

F. Granting to Plaintiffs such additional and further relief as is just and proper.

Respectfully submitted,

Dated: White Plains, New York
May 25, 2020

LEHRMAN, LEHRMAN & GUTERMAN, LLP
Attorneys for Plaintiffs
199 Main Street
White Plains, New York   10601
(914) 761-4488

By: Mark A. Guterman (NY Bar No. 2182095)