UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELMSFORD APARTMENT ASSOCIATES, LLC,
36 APARTMENT ASSOCIATES, LLC, and
66 APARTMENT ASSOCIATES, J.V.,

Plaintiffs,

Case No. 20-cv-04062 (CM)

- against -

ANDREW CUOMO, as Governor of the State
of New York,

Defendant.

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION AND ORDER TO SHOW CAUSE
## FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

LEHRMAN, LEHRMAN & GUTERMAN, LLP
Attorneys for Plaintiffs
199 Main Street, Suite 400
White Plains, New York   10601
(914)   761-4488

# TABLE OF CONTENTS

INTRODUCTION                                                                1

NEW YORK'S SUMMARY EVICTION PROCEEDINGS                                     2

PLAINTIFFS ARE ENTITLED TO THE ISSUANCE OF A                               3
TEMPORARY RESTRAINING ORDER AS PRELIMINARY
INJUNCTION PURSUANT TO FRCP 65,
AGAINST THE DEFENDANT'S EXECUTIVE ORDER 202.28

A.   Preliminary Statement                                                 4

B.   Plaintiffs Are Presumed to Have Suffered Irreparable Harm             4

C.   Plaintiffs Are Likely To Be Successful on Their Claims                5

     1.   Plaintiffs Have Standing to Challenge the Order on               5
          Constitutional Grounds

     2.   Executive Order 202.28, Dated May 7, 2020                        6
          a.  As Regards Commencement of Legal Proceedings                 6
              Based Upon Non-Payment of Rent
          b.  As Regards the Application of Security Deposits to           7
              Unpaid Rent

     3.   New York Executive Law §29-a                                     7
          a.  The Order Violates the Time Restrictions of                  9
              Executive Law §29-a
          b.  The Order Violates New York's Doctrine of                    10
              Separation of Powers
          c.  The Order Does Not Bear a Fair and Reasonable                12
              Relation to the Emergency

     4.   The Order Violated Plaintiff's Rights to Due Process             13
          Under the Fourteenth Amendment

     5.   The Order Constitutes a Taking, In Violation of Plaintiffs'      13
          Rights Under the Fifth Amendment

     6.   The Order Violates the Contract Clause                           15
          a.  The Order Substantially Impaired Plaintiffs'                 15
              Lease Rights

           b.   The Order Does Not Serve a Significant Public Service       16

           c.   The Order Did Not Constitute a Reasonable or       16
                 Appropriate Means To Achieve Its Goals

C.     CONCLUSION                        16

THE BOND REQUIREMENT OF FRCP 65 (c)         16
SHOULD BE WAIVED

# TABLE OF CASES

*ACA Int'l v. Healey,*                                                                    4
    20-cv-10767-RGS (D.Mass May 6, 2020)

*Ambrose v. City of White Plains,*                                                        15
    No. 10-CV-4946 (CS)(S.D.N.Y. Apr. 2, 2018)

*Bourquin v. Cuomo,*                                                                      10
    85 N.Y.2d 781, 784 (N.Y. 1995)

*Carter v. HealthPort Tech.,*                                                             5
    822 F.3d 47 (2d Cir. 2016)

*Clark v. Cuomo,*                                                                         10
    66 N.Y.2d 185 (1985)

*Eklecco Newco LLC v. Town of Clarkstown,*                                                14
    No. 16-CV-6492 (NSR)(S.D.N.Y. June 18, 2018)
    2018 WL 3023159

*Gambles v. Sterling Infosystems, Inc.,*                                                  5
    234 F.Supp.3d 510 (S.D.N.Y. 2017)

*Ganci v. New York City Transit Authority,*                                               14
    420 F. Supp. 2d 190 (S.D.N.Y. 2005)

*Knick v. Township of Scott,*                                                             14
    __ U.S.__, 139 S.Ct. 2162 (2019)

*Lingle v. Chevron,*                                                                      14
    544 U.S. 528 (2005)

*Lujan v. Defendants of Wildlife,*                                                        5
    504 U.S. 555 (1992)

*Martine Assoc. v. Minck,*                                                                2
    5 Misc.3d 61 (App.T. 2nd Dep't 2004)

*Mathews v. Eldridge,*                                                                    13
    424 U.S. 319 (1976)

*Matter of Levine v. Whalen,*  11
    39 N.Y.2d 510 (1976)

*McMenemy v. City of Rochester,*  13
    241 F.3d 279 (2d Cir. 2001)

*Melrose Credit Union v. City of N.Y.,*  5
    247 F. Supp. 3d 356 (S.D.N.Y. 2017)

*Nat. Res. Def. Council v. FDA,*  5
    710 F.3d 71 (2d Cir. 2013)

*Palazzolo v. Rhode Island,*  14
    533 U.S. 606 (2001)

*Poughkeepsie Hous. Auth. v. Johnson,*  3
    59 Misc.3d 138A, 2018 N.Y. Slip Op. 50570
    (App.T. 9th and 10th Jud.Dist. 2018)

*Rehman v. State Univ. of N.Y. at Stony Brook,*  13
    596 F.Supp.2d 642 (S.D.N.Y. 2009)

*Rothstein v. UBS AG,*  5
    708 F.3d 82 (2d. Cir. 2013)

*S & R Dev. Estates, LLC v. Town of Greenburgh,*  14
    336 F.Supp.3d 300 (S.D.N.Y. 2018)

*Sanitation & Recycling Indus., Inc. v. City of N.Y.,*  15
    107 F.3d 985 (2d Cir. 1997)

*Saratoga Cty. Chamber of Commerce v. Pataki,*  10
    100 N.Y.2d 801 (2003)

*Spencer Trask Software & Info. Servs, LLC v. RPost Int'l Ltd.,*  3
    190 F.Supp.2d 418 (S.D.N.Y. 2008)

*Wright v. Giuliani,*  3
    230 F.3d 543 (2d. Cir. 2000)

*Yang v. Kellner,*  4
    No. 20 Civ. 3325 (AT), S.D.N.Y. May 5, 2020
    2020 WL 2129597

# INTRODUCTION

This Memorandum of Law is submitted in support of Plaintiffs' motion pursuant to FRCP 65 for the issuance of a Temporary Restraining Order and Preliminary Injunction as against the Defendant's Executive Order 202.28 (the "Order"), issued on May 7, 2020.

The Order, entitled "Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency" (the "Order"), as the most recent Executive Order related to the State's response to the Covid-19 pandemic. The Order, among other things: (a) Prohibits the "initiating" and "enforcement" of eviction proceedings based upon non-payment of rent, for a period of 60 days from June 19, 2020; and, (b) Requires landlords, at the request of their tenants, to apply the tenants' security deposit to unpaid rent.

Plaintiffs commenced this action on the grounds that the Order violates the Plaintiffs' constitutional rights. First, the Order violates the Contract Clause by improperly vitiating landlords' contractual rights that security deposits be maintained for the purpose of providing a fund from which landlords are compensated for damages caused by tenants to the rented premises. The Order mandates that such deposit be applied to rent only at the request of the tenant, without any consent thereto required from the landlord.

The Order also violates the Takings and Due Process clauses of the Fourteenth Amendment, in that the bar on eviction proceedings precludes landlords from protecting their property and instead requires landlords to provide housing to tenants who will not pay for that privilege. The Order thus improperly places upon landlords the sole obligation to provide housing for tenants who are unable to pay for same -- an obligation that should by right be borne by society as a whole.

# NEW YORK'S SUMMARY EVICTION PROCEEDINGS

New York's eviction proceedings are defined primarily in Article 7 of the Real Property Actions and Proceedings Law ("RPAPL") and Article 7 of the Real Property Law ("RPL").[1]

Prior to the actual commencement of an eviction proceeding, the landlord must first serve a 14-day demand for the rent [RPAPL §711 (2)] and must also serve a separate Notice of non-receipt of rent. RPL §235-e (d). Thereafter, a Petition is brought before the City, Town, Village or District Court in which the property is located. The Petition is brought on at least ten, but not more than 17 days notice to the tenant [RPAPL §732], and service must be attempted on at least two days, at different times, when it might be expected that the tenant is at the premises. *See*, *Martine Assoc. v. Minck*, 5 Misc.3d 61, 62 (App.T. 2nd Dep't 2004).

Adjournments of the Petition could be had to enable the tenant to obtain counsel, for motions and for trial, all in line with the calendar restrictions of the Court. For example, while all of the City Courts meet each day, the Village and Town courts hear eviction cases at most once per week. Even when cases are eventually scheduled for trial, they are often adjourned. It is not unusual for non-payment proceedings to be delayed for several months.

After trial, and presuming that resolution is granted in its favor, the landlord will be invited to submit the proposed Judgment and Warrant for signature. The eventual execution of

---

[1] Different procedures are employed in the Housing Courts of New York City from those covering the remainder of the State. This overview will discuss only the non-New York City system, inasmuch the Plaintiff's property is located in Westchester County. That said, the system within New York is well known to include distinctive protections for tenants with the result that cases within New York City typically and almost invariably take significantly longer to prosecute that cases in the remainder of the State.

the Judgment/Warrant is then statutorily stayed for a minimum of 14 days. RPAPL 749 (2). The Court maintains the right to vacate a Judgment "upon tender or deposit with the Court of the full rent due at any time prior to its execution . . .." RPAPL 749 (3). Even after expiration of the stay period, tenants always retained the right to move the Court for additional time to pay the rent. Such motions are resolved with sympathy and compassion, and with an eye to maintaining tenancies through personal crises, provided that the tenant is honestly seeking only to pay the rent in a reasonable fashion and not simply looking for a way to live rent-free. *See, Poughkeepsie Hous. Auth. v. Johnson*, 59 Misc.3d 138A, 2018 N.Y. Slip Op. 50570 (App.T. 9th and 10th Jud.Dist. 2018). *See, also*, RPAPL 749 (3). It would be inconceivable that the New York Courts would not give tenants every reasonable opportunity to pay rent arrears, with the only possible requirement being a reasonable effort to pay on-going rent as it accrues.

**PLAINTIFFS ARE ENTITLED TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AS PRELIMINARY INJUNCTION PURSUANT TO FRCP 65, AGAINST THE DEFENDANT'S EXECUTIVE ORDER 202.28**

On this motion, Plaintiffs seek a Temporary Restraining Order ("TRO") and Preliminary Injunction against the Order, pursuant to FRCP 65. "The standard[s] for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of [Civil] Procedure are identical." *Spencer Trask Software & Info. Servs, LLC v. RPost Int'l Ltd.*, 190 F.Supp.2d 418, 419 (S.D.N.Y. 2008). Inasmuch as this action and the injunctive relief sought challenges a governmental act, relief should be granted upon a showing that Plaintiffs will suffer irreparable harm and are likely to succeed on the merits of the action. *Wright v. Giuliani*, 230 F.3d 543, 547 (2d. Cir. 2000).

**A.    Preliminary Statement**

The issues raised on this motion are similar to those raised in the matter *ACA Int'l v. Healey*, 20-cv-10767-RGS (D.Mass May 6, 2020).  In that action, the plaintiff obtained a temporary restraining order against the regulation adopted by the Massachusetts Attorney General that prohibited "the defined debt collectors from bringing enforcement actions in the state and federal courts of Massachusetts."  In granting the TRO, the District Court considered: (a) the "plethora" of protections already in place to protect debtors affected by the Rule; (b) the legitimate business interests of the parties who would have utilized the sought-to-be prohibited conduct;  (c) the impact upon non-parties whose financial well being was affected by the sought-to-be prohibited conduct;   and, (d) the interests of a capitalist society in the "efficient functioning" of financial markets.

Applying the Court's analysis to this action, the TRO should issue.  As demonstrated more fully, above, there are already significant protections built into New York's eviction process, such that tenants' interests are already protected.  Landlords must have a fair and reliable rental stream, so that they may maintain their properties and pay taxes and other operational obligations.  Aside from landlords, other segments of the economy, such as real estate agents, contractors and attorneys are intertwined with the rental market.  This society has long balanced the interests of different economic grounds, without precluding one side of the equation from even having access to the Courts to protect their interests.

**B.    Plaintiffs Are Presumed to Have Suffered Irreparable Harm**

As stated by the Court in *Yang v. Kellner*, No. 20 Civ. 3325 (AT), S.D.N.Y. May 5, 2020, "In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes

irreparable harm [cites omitted]." On this action, Plaintiffs challenge the Order specifically on constitutional grounds. As such, no further showing of harm is required.

## C. Plaintiffs Are Likely To Be Successful on Their Claims

### 1. Plaintiffs Have Standing to Challenge the Order on Constitutional Grounds

The minimum grounds for standing of the grounds of constitutional violation are: (a) an injury in fact, being "actual or imminent'" and "concrete and particularized harm" to a legally protected interest;  (2) a causal connection between the injury and the challenged conduct, so that the damage is "fairly traceable" to the challenged action; and, (3) that it is "likely," and not speculative, that a favorable ruling by the Court will redress the injury. *Gambles v. Sterling Infosystems, Inc.*, 234 F.Supp.3d 510, 517-19 (S.D.N.Y. 2017)(*quoting, Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560-61 [1992]).

In this regard, the Second Circuit has recognized that "[e]ven a small financial loss is an injury for purposes of Article III standing." *Nat. Res. Def. Council v. FDA*, 710 F.3d 71, 85 (2d Cir. 2013). The requisite "causal connection" is "a standard lower than that of proximate causation." Even where "[a] defendant's conduct that injures a plaintiff but does so only indirectly, after intervening conduct by another person, may suffice for Article III standing." *Carter v. HealthPort Tech.*, 822 F.3d 47, 55 (2d Cir. 2016)(*citing, Rothstein v. UBS AG*, 708 F.3d 82, 91–92 [2d Cir. 2013]). *See, also, Melrose Credit Union v. City of N.Y.*, 247 F. Supp. 3d 356, 365 (S.D.N.Y. 2017).

Here, Plaintiffs assert that they have been already, and likely will, in the future, be injured by the Order, in that the Order has precluded Plaintiffs from commencing eviction proceedings

against their tenants based upon non-payment of rent. Each month that goes by in which the Plaintiffs cannot protect their rights to collect rent serves only to exacerbate the damage to Plaintiffs and to all landlords. In like fashion, the premature use of the security deposit harms Plaintiffs by removing those monies as a fund from which to cover actual, physical damages to the leased property. The replenishment method offered in the Order is wholly and palpably insufficient, in that the costs of obtaining compliance after a tenant's default in the replenishment will nearly always exceed the amount of the deposit, itself.

### 2. Executive Order 202.28, Dated May 7, 2020

On March 7, 2020, Governor Cuomo's issued Executive Order 202, which declared that an emergency existed in the State of New York relative to the Covid-19 pandemic.

On that same day, Governor Cuomo issued the first in what is now a series of Executive Orders in response to the pandemic. Executive Order 202.28, which is the subject of this action, issued on May 7, 2020.

### a. As Regards Commencement of Legal Proceedings Based Upon Non-Payment of Rent

The Order states, in relevant part:

> There shall be no initiation of a proceeding or enforcement of either an eviction of any residential or commercial tenant, for nonpayment of rent . . . rented by someone that is eligible for unemployment insurance or benefits under state or federal law or otherwise facing financial hardship due to the COVID-19 pandemic for a period of sixty days beginning on June 20, 2020.

The Order thereby precludes the Plaintiffs from commencing any action against their residential tenants based upon non-payment of rent until at least August 19.

-6-

### b. As Regards the Application of Security Deposits to Unpaid Rent

The Order states that, through June 6, 2020:

> Sections 7-103, 7-107 and 7-108 of the General Obligations Law to the extent necessary [are suspended or modified] to provide that:
>
> Landlords and tenants or licensees of residential properties may, upon the consent of the tenant or licensee, enter into a written agreement by which the security deposit and any interest accrued thereof, shall be used to pay rent that is in arrears or will become due. If the amount of the deposit represents less than a full month rent payment, this consent does not constitute a waiver of the remaining rent due and owing for that month. Execution in counterpart by email will constitute sufficient execution for consent;
>
> Landlords shall provide such relief to tenants or licensees who so request it that are eligible for unemployment insurance or benefits under state or federal law or are otherwise facing financial hardship due to the COVID-19 pandemic;
>
> It shall be at the tenant or licensee's option to enter into such an agreement and landlords shall not harass, threaten or engage in any harmful act to compel such agreement;
>
> Any security deposit used as a payment of rent shall be replenished by the tenant or licensee, to be paid at the rate of 1/12 the amount used as rent per month. The payments to replenish the security deposit shall become due and owing not less than 90 days from the date of the usage of the security deposit as rent. The tenant or licensee may, at their sole option, retain insurance that provides relief for the landlord in lieu of the monthly security deposit replenishment, which the landlord, must accept such insurance as replenishment.

The Order thereby vitiates Plaintiffs' right to have the security deposit held as a fund from which to pay for damages by Plaintiffs' tenants to their rental units. The replenishment mechanism is unreasonable and not sufficient to protect Plaintiffs' rights.

### 3.   New York Executive Law §29-a

The Order was issued pursuant to New York's Executive Law §29-a. However, on

March 2, 2020, the New York State Legislature enacted significant amendments to Executive

Law §29-a, just five days before the Governor's declaration of emergency and the first of his

Executive Orders. As so amended, §29-a provides, in relevant part:[2]

1. Subject to the state constitution, the federal constitution and federal statutes and regulations, the governor may by executive order temporarily suspend ~~specific provisions of~~ any statute, local law, ordinance, or orders, rules or regulations, or parts thereof, of any agency during a state disaster emergency, if compliance with such provisions would prevent, hinder, or delay action necessary to cope with the disaster *or if necessary to assist or aid in coping with such disaster. The governor, by executive order, may issue any directive during a state disaster emergency declared in the following instances: . . . epidemic, disease, outbreak . . .. Any such directive must be necessary to cope with the disaster and may provide for procedures reasonably necessary to enforce such directive.*

2. Suspensions pursuant to subdivision one of this section shall be subject to the following standards and limits, *which shall apply to any directive where specifically indicated:*

a. no suspension *or directive* shall be made for a period in excess of thirty days, provided, however, that upon reconsideration of all of the relevant facts and circumstances, the governor may extend the suspension for additional periods not to exceed thirty days each;

b. no suspension *or directive* shall be made which ~~*does not safeguard the*~~ *is not in the interest of the* health ~~and~~ *or* welfare of the public and which is not reasonably necessary to *aid* the disaster effort;

c. any such suspension order shall specify the statute, local law, ordinance, order, rule or regulation or part thereof to be suspended and the terms and conditions of the suspension;

d. the order may provide for such suspension only under particular circumstances, and may provide for the alteration or modification of the requirements of such statute, local law, ordinance, order, rule or regulation suspended, and may include other terms and conditions;

---

[2]For these purposes, the portions in italics and strike-outs show the 2020 amendments.

-8-

e. any such suspension order *or directive* shall provide for the minimum deviation from the requirements of the statute, local law, ordinance, order, rule or regulation suspended consistent with the *goals of the* disaster action deemed necessary; and

f. when practicable, specialists shall be assigned to assist with the related emergency actions to avoid needless adverse effects resulting from such suspension.

3. Such suspensions *or directives* shall be effective from the time and in the manner prescribed in such orders and shall be published as soon as practicable in the state bulletin.

4. The legislature may terminate by concurrent resolution executive orders issued under this section at any time.

These amendments created a wholly new class of action by the Governor, in the form of a "directive," rather than a mere "suspension" of the provisions of an already existing statute. Thus, in the precatory paragraph to the provision regarding the eviction moratorium, Executive Order 202.28 states that it is made upon the Governor's authority under Executive Law §29-a to "issue . . . directives . . ." with the result that the Governor has not only suspended laws, but he has effectively legislated new laws.

The Order violates thus various principles of New York law, which led to the violation of Plaintiffs' constitutional rights, as outlined below.

### a. The Order Violates the Time Restrictions of Executive Law §29-a

Executive Law §29-a (2)(a), even as amended, clearly limits the effectiveness of any suspension or directive to 30 days. The Order violates this provision in that: (a) It extends the eviction moratorium to August 19, 2020; and, (b) The replenishment provisions regarding the use of security deposits to pay rent continues over a 12 month period, which does not even start

-9-

until 90 days after the rent is so applied.

Thus, both provisions facially remain effective well beyond the 30 day limit.

### b. The Order Violates New York's Doctrine of Separation of Powers

The latest iteration of New York's Constitution maintains the separation of powers to the Legislative, Executive, and Judicial branches. Thus, Article III, Sec. 1, provides that the "legislative power of this state shall be vested in the senate and assembly," while Article IV, Sec. 1 provides that the "executive power shall be vested in the governor . . .." Article VI, Sec. 1 provides for a "unified court system."

Not surprisingly, New York does not countenance the intrusion of one branch into those aspects of government specifically granted to a different branch. As stated by the New York Court of Appeals:

> The constitutional principle of separation of powers, "implied by the separate grants of power to each of the coordinate branches of government" [cites omitted], requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies [cite omitted].

*Bourquin v. Cuomo*, 85 N.Y.2d 781, 784 (N.Y. 1995). Put differently, "the executive branch's mere creation of a new procedural, administrative mechanism, such as a task force or consumer board, to better implement a legislative policy does not offend the Constitution." *Id.* at 787. The result of the Governor's intrusion into the legislative process to render that act "ultra vires. " *Saratoga Cty. Chamber of Commerce v. Pataki*, 100 N.Y.2d 801 (N.Y. 2003).

In *Clark v. Cuomo*, 66 N.Y.2d 185,189 (1985), the Court of Appeals stated the general test to be applied. "It is only when the Executive acts inconsistently with the Legislature, or

usurps its prerogatives, that the doctrine of separation is violated." Executive Law §29-a contains broad powers granted to the Governor, but fails to include a definition of the all-important term "directive" or give guidance as to the extent of those powers. Nonetheless, the Legislature would have been barred from delegating its own legislative function to the Governor. "Because of the constitutional provision that "[t]he legislative power of this State shall be vested in the State and the Assembly" [cite omitted], the Legislature cannot pass on its law-making functions to other bodies [cite omitted]." *Matter of Levine v. Whalen*, 39 N.Y.2d 510, 515 (1976).

Executive Law §29-a, even as adopted, does not - - and could not - - specifically give the Governor the legislative power to rewrite the various provisions of the General Obligations Law regarding the use of security deposits, and that portion of Executive Law 202.28 violates New York law.[3]

Similarly, the eviction moratorium also violates the doctrine of Separation of Powers. First, the Order re-writes the provisions of the RPAPL as regards the procedural requirements regarding non-payment eviction proceedings. Second, the Order violates the province of the judiciary to hear and determine cases, effectively re-writing those portions of New York's Constitution, Bill of Rights RPAPL and Civil Practice Law and Rules regarding when and what cases the courts are permitted to hear, as well as its citizenry's rights to have their grievances heard by the Courts.

---

[3]It must be noted that Plaintiffs do not argue herein that Executive Law §29-a as amended is, itself, unconstitutional. Plaintiffs assert only that the Governor's reliance upon that law is misplaced and improper, and that it is the Governor's use of §29-a violates New York law.

### c. The Order Does Not Bear a Fair and Reasonable Relation to the Emergency

Even presuming that the emergency situation created by the pandemic that resulted in the amendments to Executive Law §29-a still exist, it remains that the extent of relief provided for in the Order is not needed. Executive Law §29-a (2)(b) states that "no suspension or directive shall be made which is not in the interest of the health or welfare of the public and which is not reasonably necessary to aid the disaster effort." Yet, the two provisions that are the subject of this action do not comport with this requirement. At the time that the Order was issued no court was open in New York to hear any eviction cases based upon non-payment of rent. This 'fact on the ground' manifests itself in the clear inability of any landlord to press the non-payment issue against any tenant. It follows that both the moratorium and the use of security deposits, were wholly unnecessary and did nothing to actually remove the threat of eviction as regards any tenant.

Instead, the Order gave a governmental imprimatur that rent need not be paid until at least August 19. Landlords, including the Plaintiffs herein, require a steady and reliable stream of rents in order to maintain their own obligations, to pay taxes, mortgages, salaries, and other costs of maintaining their properties. By issuing the Order, the Governor created a significant danger to that rental stream, all without any practical benefit to tenants.

Most importantly, the Court system already provides all necessary protections for tenants, while at the same time not prejudicing landlords. The legal process in bringing an eviction proceeding includes the opportunity for the Court to fashion reasonable relief, thereby providing tenants the opportunity to repay their rent, while providing assurance to landlords that in the

event of continued non-payment the landlord will be able to recover possession of their properties through the eviction process.

The State is fully capable of providing monetary relief to those tenants who are ultimately unable to pay on-going rent, either through direct payments to landlords, or by additional grants to tenants. What is untenable is the Government's foisting upon landlords the Government's own obligations and the obligations of society to assist needy tenants.

### 4. The Order Violated Plaintiff's Rights to Due Process Under the Fourteenth Amendment

The across-the-board moratorium on eviction proceedings violates Plaintiff's rights to due process under the Fourteenth Amendment. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, rather than providing for expeditious resolution of rent issues, the Order actually precludes the Plaintiffs from being heard at *any* time, let alone at a meaningful time or manner.

A claim for violation of procedural due process requires a showing that the plaintiff " (1) . . . possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F.Supp.2d 642 (S.D.N.Y. 2009), *citing*, *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001).

Here, both provisions of the Order that are now challenged removed the Plaintiffs' rights without any opportunity to be heard.

### 5. The Order Constitutes a Taking, In Violation of Plaintiff's Rights Under the Fifth Amendment

A taking under the Fifth Amendment occurs "as soon as a government takes his property

for public use without paying for it." *Knick v. Township of Scott*, ___ U.S.___, 139 S.Ct. 2162, 2170 (2019). *See, also, Eklecco Newco LLC v. Town of Clarkstown*, No. 16-CV-6492 (NSR), 2018 WL 3023159 (S.D.N.Y. June 18, 2018). The *Knick* Court continued:

> . . . It does not say: "Nor shall private property be taken for public use, without an available procedure that will result in compensation." If a local government takes private property without paying for it, that government has violated the Fifth Amendment - - just as the Takings Clause says - - without regard to subsequent state court proceedings.

*Id.* In short, the violation occurs at the time of the taking, "regardless of post-taking remedies that may be available to the property owner." *Id.* Where governmental "regulations of private property . . . be so onerous that its effect is tantamount to a direct appropriation or ouster" so as to constitute a taking. *Lingle v. Chevron,* 544 U.S. 528 (2005). Such regulatory taking can be found where the government activity "has a significant economic impact and interferes with legitimate economic expectations or property interests . . . ." *S & R Dev. Estates, LLC v. Town of Greenburgh*, 336 F.Supp.3d 300, 315, fn.7 (S.D.N.Y. 2018).

Plaintiffs also allege physical takings of their properties. "'The clearest sort of taking,' commonly referred to as a "physical" taking, 'occurs when the government encroaches upon or occupies private land for its own proposed use.'" *Ganci v. New York City Transit Authority*, 420 F. Supp. 2d 190, 195 (S.D.N.Y. 2005)(*quoting, Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). By prohibiting the Plaintiffs from asserting its contractual and statutory rights, the Order effectively created an actual, state-sponsored occupancy of the Plaintiffs' properties.

**6.    The Order Violates the Contract Clause**

The test for a violation of the Contracts Clause is well settled:

> . . . Courts use a three-part test to determine when a state's power is limited by
> the Contract Clause: "(1) whether the contractual impairment is in fact
> substantial; if so, (2) whether the law serves a significant public purpose, such
> as remedying a general social or economic problem; and if such a public
> purpose is demonstrated, (3) whether the means chosen to accomplish this
> purpose are reasonable and appropriate."

*Ambrose v. City of White Plains*, No. 10-CV-4946 (CS), at *20 (S.D.N.Y. Apr. 2, 2018)(*quoting*,

*Sanitation & Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 993 (2d Cir. 1997).

**a.    The Order Substantially Impaired Plaintiffs' Lease Rights**

The Order directly impaired Plaintiffs' rights as regard the use of security deposits

tendered by their tenants, by removing the deposit from its agreed upon purpose, without the

Plaintiffs' consent. In fact, the security deposit is the only known source of funds frm which a

landlord can recoup the costs of repairs and unpaid rent from its tenants. The importance of the

security deposit is mirrored by the length to which the State has gone to police the tender and use

of the deposit by landlords. Article 7 of the General Obligations Law is dedicated to security

deposits. In June 2019, the Legislature enacted GOL 7-108, which contains a highly detailed

structure for the application of security deposits, which includes timetables of notices and

inspections, all of which are required for a landlord to actually use the deposit for its intended

purposes. The State cannot seriously contend that the removal of this protection is anything but

substantial.

The eviction moratorium also impairs Plaintiffs' implied contract right to use the Court

system to assert their rights as against those tenants who fail to pay their rent. Plaintiffs do not assert that each and every tenant who is in arrears should be evicted. However, the total ban on such proceedings keeps the Plaintiffs from even obtaining conditional relief. For tenants who stop paying rent in May, the four months that accrue through August constitutes a full third of the income stream to which the Plaintiffs are entitled under their leases.

### b.     The Order Does Not Serve a Significant Public Service

As stated, above, when the Order issued there were presently no Courts in the State that were hearing routine non-payment eviction cases. No such Court is yet up and running in Westchester County. As such, the Order accomplished nothing, as landlords were already unable to evict any tenants. Moreover, the New York Courts were already well able to protect tenants' rights, through the usual and customary proceedings available.

### c.     The Order Did Not Constitute a Reasonable or Appropriate Means To Achieve Its Goals

To the extent that tenant might require additional protections beyond the protections already in place in New York's Courts, such relief should only be put into place at the proper time and the costs thereof should be borne by the State, not by Plaintiffs or any other landlord.

## C.     CONCLUSION

Based upon the above, the Plaintiffs have met their burden for the issuance of a Temporary Restraining Order against the Order.

## THE BOND REQUIREMENT OF FRCP 65 (c) SHOULD BE WAIVED

Plaintiffs request that the security bond provision of FRCP 65 (c) be waived. The Order does not relate to any activity of the State, itself, but implicates only the rights of landlords to

bring eviction proceedings under State law. As such, the Defendant will not incur any damages by reason of the TRO or preliminary injunction.

WHEREFORE, the Plaintiffs respectfully that this Court: (a) Grant a Temporary Restraining Order and Preliminary Injunction as against the implementation and enforcement of the Defendant's Executive Order 202.28; and, (b) Grant such additional and further relief in Plaintiffs' favor as is just and proper.

Dated:      White Plains, New York
             June 3, 2020

                                 LEHRMAN, LEHRMAN & GUTERMAN, LLP
                                 Attorneys for Plaintiffs
                                 199 Main Street, Suite 400
                                 White Plains, New York   10601
                                 (914)   761-4488

                                 By:   Mark A. Guterman, Esq.