UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELMSFORD APARTMENT ASSOCIATES, LLC,
36 APARTMENT ASSOCIATES, LLC, and
66 APARTMENT ASSOCIATES, J.V.,

Plaintiffs,

Case No. 20-cv-04062 (CM)

- against -

ANDREW CUOMO, as Governor of the State
of New York,

Defendant.

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

LEHRMAN, LEHRMAN & GUTERMAN, LLP
Attorneys for Plaintiffs
199 Main Street, Suite 400
White Plains, New York   10601
(914)   761-4488

# TABLE OF CONTENTS

PRELIMINARY STATEMENT                                          1

THE ORDER EFFECTS A REGULATORY TAKING                         4

THE ORDER EFFECTS A PHYSICAL TAKING                           7

THE ORDER VIOLATES THE FIFTH AMENDMENT'S                      8
   CONTRACTS CLAUSE

THE ORDER VIOLATES PLAINTIFFS' DUE PROCESS RIGHTS            11

THE GOVERNOR'S ORDER IS NOT PROTECTED BY THE                 14
   ELEVENTH AMENDMENT

CONCLUSION                                                    17

# TABLE OF CASES

*Allied Structural Steel ,*                                                              9
    438 U.S. 234 (1978)

*Andrus v. Allard,*                                                                      4
    444 U.S. 51, 65 (1979)

*Armstrong v. United States,*                                                           4
    364 U.S. 40 (1960)

*Board of Regents v. Roth,*                                                             11
    408 U.S. 564 (1972)

*Buffalo Teachers Federation v. Tobe,*                                               4, 5
    464 F.3d 362 (2d Cir. 2006)

*Concrete Pipe & Prods. of Cal., Inc. v.*                                               6
    *Constr. Laborers Pension Trust for S. Cal.,*
    508 U.S. 602 (1993)

*Donahue v. Paterson,*                                                                  8
    715 F. Supp. 2d 306 (N.D.N.Y. 2010)

*Eng v. Coughlin,*                                                                     15
    858 F.l2d 889 (2d Cir.1988)

*Euclid v. Ambler Co.,*                                                                 6
    272 U.S. 365 (1926)

*Ex parte Young,*                                                                      14
    209 U.S. 123 (1908)

*Exxon Corp. v. Governor of Maryland,*                                                 12
    437 U.S. 117, 124 (1978)

*Fed. Deposit Ins. Corp. v. Mallen,*                                                   13
    486 U.S. 230 (1988)

*Fed. Home Loan Mtge. Corp. v. New York State DHCR,*                                   12
    83 F.3d 45 (2d Cir. 1996)

*Glen 6 Assoc. v. Dedaj*,
    770 F.Supp. 225 (S.D.N.Y. 1991)                13

*Green v. Mansour*,
    474 U.S. 64 (1985)                14

*Hadacheck v. Los Angeles*,
    239 U.S. 394 (1915)                6

*Harmon v. Markus*,
    412 F. App'x 420 (2d Cir. 2011)                11

*Korematsu v. United States*,
    323 U.S. 214 (1944)                3

*Ladd v. U.S.*,
    630 F.3d 1015 (2010)                4

*Local 342, Pub. Serv. Employees v. Town Bd.*,
    31 F.3d 1191 (2d Cir. 1994)                11

*Local 851 v. Haniel Logistics, Inc.*,
    90 F.Supp.2d 237 (E.D.N.Y. 2000)                15

*Lowrance v. Coughlin*,
    862 F. Supp. 1090 (S.D.N.Y. 1994)                15

*Marcus Brown Holding Co. v. Feldman*,
    256 U.S. 170 (1921)                10

*Matter of Brusco v. Braun*,
    84 N.Y.2d 674 (1994)                13

*Murr v. Wisconsin*,
    137 U.S. 1933 (2017)                4

*Nat'l R.R. Passenger Corp. v. McDonald*,
    978 F. Supp.2d 215 (S.D.N.Y. 2013)                15

*Nicholas v. Bratton*,
    376 F.Supp.3d 232 (S.D.N.Y. 2019)                11

*Papasan v. Allain*,
    478 U.S. 265 (1986)                14

*Penn Central Transp. Co. v. City of New York,*
　　438 U.S. 104 (1978)　　　　　　　　　　　　　　　　5

*Pennhurst State Sch. & Hosp. v. Halderman,*
　　465 U.S. 89 (1984)　　　　　　　　　　　　　　　　15

*Sanitation & Recycling Indus., Inc. v. City of New York,*
　　107 F.3d 985 (2d Cir. 1997)　　　　　　　　　　　8, 9

*United States Trust Co. of N.Y.  v. New Jersey,*
　　431 U.S. 1 (1977)　　　　　　　　　　　　　　　　8

*Va. Office for Protection v. Stewart,*
　　563 U.S. 247 (2011)　　　　　　　　　　　　　　　14

*Verizon Maryland Inc. v. Public Service Commission,*
　　535 U.S. 635 (2002)　　　　　　　　　　　　　　14, 15

*Yee v. City of Escondito,*
　　503 U.S. 519 (1992)　　　　　　　　　　　　　　　5, 6

## PRELIMINARY STATEMENT

Underlying the Governor's legal arguments is his insistence that the Order be deemed legitimate and given all of the deference otherwise reserved for properly adopted acts of duly elected Legislatures. The Governor completely fails to address the Plaintiffs' direct attack on the Order, especially as to the Order constituting an *ultra vires* act as a violation of Executive Law 29-a. Such invalidity is not based upon any complex aspect of New York law, but is plainly found. Plaintiffs do not rely exclusively upon such invalidity, but it cannot be ignored that the invalidity permeates the Order and its enforcement.

The foundation of the Governor's argument, that tenants would have been subjected to wholesale eviction is without any basis. A landlord would have gained nothing by replacing one tenant who is not able to pay the rent with another tenant that is not able to pay the rent. The same cannot be said for the effect of the moratorium, which unequivocally denies landlords access to the Courts, in which the Plaintiffs could have made any enforceable agreements. The 'doomsday' scenario, as asserted by the Governor and the *Amici* simply provided the Governor with the underlying, political fodder to attempt to justify the moratorium.

The moratorium was a disservice to landlords and tenants that are able to come to their own arrangement, because it unnecessarily created animosity between the parties to the lease. To the extent that landlords and tenant would be unable to come to such agreement, it was the State's obligation, not the landlord's, to provide a financial remedy. In short, the State cannot be permitted to disavow its own societal obligations, all at the expense of this one class of citizen.

The Governor argues that Executive Order 202.9 provided relief to Plaintiffs from the effects of the Order. Yet, Executive Order 202.9 was in effect only from March 21 through April

20, prior to the issuance and effective date of the Order. Moreover, the regulations issued by DFS did not issue until March 24. Those regulations applied only to residential mortgages held by "invidivuals." Nothing in the new regulations assisted any of the Plaintiffs.

Lastly, both the Governor and the *Amici* argue that a Due Process analysis requires a "fact specific inquiry" [*see*, Defendant's MOL, p. 11-12], is at odds with the Governor's consent that Plaintiffs' motion be converted to one for summary judgment without the need to conduct discovery. In so consenting, and in cross-moving for summary judgment in his own favor, the Governor should be deemed to have adopted all factual predicates in Plaintiffs' favor, including the harm suffered by the Plaintiffs as a result of the Order. The Governor should thus be barred from now asserting the factual issues predominate this action.

The *Amici* misrepresent the relevant statistics and make no distinction between the impact of Covid-19 prior to the Order and the facts as they presently exist, even though the effect of the Order will continue until at least August 20. The *Amici* also apply the hardships facing the New York City Courts to all of the Courts of this State, even those not facing similar challenges.

Most importantly, the *Amici* improperly blame the Plaintiffs and all similarly situated landlords for the failure of the State to protect tenants from eviction. This case does not seek to avoid the impact of the Covid-19 pandemic. It is a challenge to the illegal and unconstitutional attempt by the State to foist upon landlords and owners the economic and financial burden of supplying a remedy to the inability of tenants to pay their rent.

The rent that tenants are unable to pay is equal in amount to the harm be suffered by landlords. The *Amici* assert that the Order is temporary, yet in the same breath claim that the harm to be suffered by tenants is irreparable. Plaintiffs join the *Amici* for this limited purpose,

but instead look to the State for relief. Yet, the *Amici* readily cite to the State's projected $13.3 billion tax shortfall. *Amici*, MOL, p. 22. This evidences that the State is seeking to avoid its obligation to assist tenants by illegally transferring that responsibility to the Plaintiffs.

In every press conference held by him, the Governor has repeated the mantra that "It's all in the metrics." On June 16, the Governor proudly announced that New York has the "lowest rate of transmission of any state. "[1] However, the Governor is not consistent to this approach as regards eviction proceedings. The Governor did not ban the recent protest marches even in New York City, yet continues to bar summary proceedings, without concern to facts of the individual cases.

The *Amici* argue that this is the worst health crisis that the country has faced since the 1918 pandemic. Yet, the Court should not ignore the fact that crises have often been used as the vehicle by which to violate constitutional protections. The lessons of *Korematsu v. United States*, 323 U.S. 214 (1944) cannot be ignored, simply because we are not dealing with actual internment camps. A politicized attack upon constitutional rights is every bit as insidious and must be called out as such. As Justice Jackson wrote, in his dissent:

> . . . But a judicial construction of the due process clause that will sustain this order is a far more subtle blow to liberty than the promulgation of the order itself. A military order, however unconstitutional, is not apt to last longer than the military emergency. Even during that period a succeeding commander may revoke it all. But once a judicial opinion rationalizes such an order to show that it conforms to the Constitution, or rather rationalizes the Constitution to show that the Constitution sanctions such an order, the Court for all time has validated the principle . . .. The principle then lies about like a loaded weapon ready for the hand of any authority that can bring forward a plausible claim of an urgent need. Every repetition imbeds that principle more deeply in our law and thinking

---

[1] https://www.timesunion.com/news/article/Cuomo-says-New-York-has-lowest-rate-of-infection-15343680.php

-3-

and expands it to new purposes.

323 U.S. at 245-46.

Nor should this Court believe that the evictions will magically start on August 20. The Governor is quoted on May 7 as stating, "What's going to happen on August 20? I can't tell you. Whatever happens, we'll handle it. That's what we've been doing with the situation all along. Literally, in two week increments."[2] Of course, the 60-day complete moratorium contained in the Order extended well beyond two weeks from its issuance and well beyond the 30-day limitation of Executive Law 29-a. Left unanswered is whether the moratorium would be extended, if the Governor believes that - - despite the metrics in all other phases of the economy - - evictions should still be stayed.

## THE ORDER EFFECTS A REGULATORY TAKING

In *Armstrong v. United States*, 364 U.S. 40, 49 (1960), the Supreme Court stated the fundamental purpose of the Takings Clause was to "bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." This analysis necessarily balances the competing interests of private property and government's power to "adjus[t] rights for the public good." *Murr v. Wisconsin*, 137 U.S. 1933, 1943 (2017) (*quoting, Andrus v. Allard*, 444 U.S. 51, 65 (1979). While permanent deprivations are more easily recognized, an improper taking will also be found even for temporary measures. *Ladd v. U.S.,* 630 F.3d 1015, 1018 (2010).

A regulatory taking is determined upon the three-part test set forth in *Buffalo Teachers*

---

[2]https://www.msn.com/en-us/foodanddrink/foodnews/cuomo-extends-new-yorks-pause-on-evictions-until-august-20/ar-BB13Kwwk.

*Federation v. Tobe*, 464 F.3d 362 (2d Cir. 2006), and previously identified in *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978): (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.

First, the Order undeniably bars the Plaintiffs from obtaining relief as against any tenant that failed to pay rent, thereby imposing an improper restriction on Plaintiffs' property rights. By not waiting to issue the Order until June 20, the Governor clearly intended that the Order have immediate impact. The rental stream landlords expected to receive in this period constituted a full quarter (25%) of the total income that any landlord might receive from its tenants. This was in addition to the restrictions that went into effect immediately in March, when the Governor first introduced "New York on Pause," and the New York Courts were closed. The Governor cannot ignore the fact that the Order has had an immediate and unprecedented impact on rental income in the State.

Nor can the Governor ignore the fact that all other facets of the New York economy and the phased re-openings were driven by metrics and science to stop the spread of the virus. Yet, the eviction moratorium dictated a date certain and is subject to further extension, without regard to the metrics. Had the Governor's true intent been to treat the rent issue within the over-all context of the phased re-openings, he would have left the issue to the Courts to resolve. His singling out of this industry establishes that the Order was beyond constitutional bounds and was improper.

This case is not similar to the issue of rent regulations as was the case in *Yee v. City of Escondito*, 503 U.S. 519 (1992). Even the *Yee* Court recognized that "the regulation's purpose or

the extent to which it deprives the owner of the property's economic use suggests that the regulation has unfairly singled out the property owner to bear a burden that should be borne by the public as a whole." *Yee*, 503 U.S. at 523. Rent regulations in New York have always maintained the tenant's obligation to pay rent, and provide for the eviction of the tenant upon the failure to do so. This Order, by contrast, completely removes landlords' rights to evict upon rental defaults and is actually contrary to New York's rent regulations.

Second, this is not a case of simple "diminution of value," as was the case in *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 645 (1993).[3] The March 2020 amendments to Executive Law 29-a will continue through April 30, 2021. There is every reason to believe that the Governor will extend the moratorium should the economy not rebound as quickly as he would like. That decision will not be based upon the ability of the Court system to hear cases, but upon political arguments similar to those made by the *Amici*. It remains that the burden of assisting tenants should be borne by the State, not by private landlords.

Landlords generally have distinct expectations regarding their properties. They expect to receive their rents in a timely fashion, while maintaining the right to remove any tenant who improperly withholds or fails to timely pay the rent. They also maintain security deposits as the means to obtain some protection against tenants who violate their lease obligations. Landlords

---

[3]The Governor's citation to *Concrete Pipe* includes reference to two, unnamed cases, in which it is asserted the value of property was diminished by 75% and 92.5%, respective. Both cases, *Euclid v. Ambler Co.*, 272 U.S. 365 (1926) and *Hadacheck v. Los Angleles*, 239 U.S. 394 (1915) were decided principally upon the Police Power, which the *Euclid* Court stated has "always been restrained to those uses of property which invade the rights of others, and courts consistently decline to permit an extension of the police power to uses of property involving mere questions of taste or preference or financial advantage to others."

eschew court proceedings if possible, since every dollar spent on counsel fees reduces their already slim profit margins, especially in rent regulated properties. Given the limited source of income, every month of moratorium constitutes a significant intrusion into those expectations. And, while landlords are able to make economic decisions based upon the existence of rent regulations, generally, they are now wholly at the mercy of the Governor's moratorium, which could not have been predicated. The Governor's claim that the Order vindicates a significant State concern is without foundation. The Governor has produced no evidence that the lifting of the moratorium would result in widespread evictions.

Third, this case involves the Governor's attempt to protect one class of citizen by casting upon another class of citizen the financial obligations that, if borne at all, should be borne by the State, itself. As stated in *Lucas*, 505 U.S. at 1018 (1992), ". . . regulations that leave the owner of land without economically beneficial or productive options for its use . . . carry with them a heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm."

Notably, the Governor has not called upon any financial industries to contribute their private funds toward rental arrears, nor did he compel any other component of the economy - - from Costco, to supermarkets to Home Depot - - to make their products or services available to the "protected class" for free, or even on a delayed payment basis. Yet, the Governor had no reservation in requiring owners to continue to provide housing, by removing the surest enforcement mechanism open to landlords.

## THE ORDER EFFECTS A PHYSICAL TAKING

Even the Governor concedes that a physical taking of property without compensation

violates the Constitution.  The practical effect of the Order is to enforce a physical intrusion of

Plaintiffs' property by the very tenants who the Order keeps from being evicted.  This is distinct

from the normal proceedings under eviction laws, whereby the Governor has imposed a State

sponsored refusal to permit Plaintiffs to protect their rights.  This moratorium is no different

from any other compelled physical occupancy, as it compels the Plaintiffs to maintain those

tenants in violation of the substantive rule of law and the leases they have with their tenants.

## THE ORDER VIOLATES THE FIFTH AMENDMENT'S CONTRACTS CLAUSE

A Contract Clause claim is subject to a three-part test: "'(1) whether the contractual

impairment is in fact substantial; if so, (2) whether the law serves a significant public purpose,

such as remedying a general social or economic problem; and if such a public purpose is

demonstrated, (3) whether the means chosen to accomplish this purpose are reasonable and

appropriate.'" *Donahue v. Paterson*, 715 F. Supp. 2d 306, 317 (N.D.N.Y.  2010), *quoting,*

*Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997).

First, it is well established that the "'[t]otal destruction" or repudiation of the contract is

not necessary for an impairment to be substantial." *Donahue*, 715 F.Supp. at 318, *quoting,*

*United States Trust Co. of N.Y. v. New Jersey,* 431 U.S. 1, 26-27 (1977).  Rather, the "primary

consideration in determining whether the impairment is substantial is the extent to which

reasonable expectations under the contract have been disrupted." *Sanitation*, 107 F.3d at 993.

No reasonable person could have predicted that within two short months, the economy of

the United States would have ground to a halt and New York would have entered what amounts

to a shut-in of its population.  Nor could any reasonable person have expected that the Governor

would have imposed an extended moratorium on eviction proceedings and re-written law properly adopted by the Legislature regarding the use of security deposits.

Second, the governmental act must be in furtherance of a "'legitimate public purpose," that is "aimed at remedying an important 'general social or economic problem' rather than "providing a benefit to special interests." *Sanitation*, 107 F.3d at 993, *quoting, Allied Structural Steel*, 438 U.S. 234, 247 (1978).

Thus, both the moratorium and the use of security deposits catered to a special interest, but did not reasonably address a legitimate public purpose. The application of security deposits provided payment of only one month's rent, but imposed a moratorium for three months. It accomplished this feat by removing the only financial protection that landlords had to tenant misfeasance.

Third, the means by which the Governor to achieve his goal was not reasonable, as it was not "appropriately tailored to the emergency that it was designed to meet." *Allied Structural*, 438 U.S. at 242. For the same reasons as set forth above, regarding the 'legitimate purpose" prong, the Order fails this final portion of the test. The Governor asserts that the moratorium is reasonable because the Order also includes a ban on mortgage foreclosure actions. This argument also fails. First, not all rental properties are subject to mortgages, thereby providing no protection to those properties that owned out-right. Second, the costs, additional interest and penalties caused by late payment of the mortgage are not necessarily waived. Thus, whereas a landlord is not likely to ever received unpaid rent for a tenant that vacates or is evicted, the landlord would still remain liable for the additional amounts pursuant to the mortgage.

The Governor's Police Power defense of the Order fails. First, this Court should not

defer to Order, since it was not a legislative act and was issued by the Governor in violation of New York law. As such, the Order is not entitled to any deference.

Second, the Order is not a reasonable extension of rent stabilization. Rent regulations in New York are applicable only in the municipalities that adopted them and were limited to residential buildings of defined size and date of construction. They are not applicable in any part of the State north of Westchester and Rockland Counties. Even if the Order was properly promulgated - - which it was not - - it affected both commercial and residential properties, without regard to size and restricts properties throughout the State.

Thus the "leading case,"[4] *Marcus Brown Holding Co. v. Feldman*, 256 U.S. 170, 198 (1921), is not applicable here. The timely payment of rent is the most important 'stick' that landlords possess as regards their properties, and all rent regulation laws require the payment of rent by the tenant, whoever that is. Rent regulations also carve out exceptions where the tenant creates a nuisance or otherwise violates substantial obligations of the tenancy.

Only in this context did the Supreme Court hold that rent regulations that are imposed in times of emergencies do not violate the Contract Clause. This Order is different, in that the Order unnecessarily and improperly created a threat to the Plaintiffs' rental stream. This was not a case where a landlord was limited in the rent that it would received. Here, Plaintiffs were told that they could not take any action against tenants that did not pay their rent thereby removing the one mechanism by which landlords could enforce their rights. Indeed, economic realities ameliorate against landlords commencing plenary actions to collect unpaid rent, since the costs of pursuing tenants is greater than potential recovery.

---

[4]As so styled in the Governor's MOL, p. 16.

The Governor also argues that the moratorium is reasonable in that it "applies *only* to renters who are 'eligible for unemployment insurance or benefits under state or federal law or otherwise facing financing hardship due to the COVID-19 pandemic." (emphasis added). Yet, the Order fails to define what it means for a tenant to be "facing financial hardship due to the COVID-19 pandemic." The tenant who is now unemployed would appear to be covered. But so, too, would a tenant who worked through the entire shut-down, but who has a family member that was not employed and needed assistance by the working-tenant. If the Order is so extended, then nearly every tenant in New York would be covered, as was clearly the intention of the Order.

## THE ORDER VIOLATES PLAINTIFFS' DUE PROCESS RIGHTS

Plaintiffs assert a claim for deprivation of their procedural Due Process rights. In opposition and in cross-moving for summary judgment, the Governor argues that a Due Process claim cannot stand in the place of a more particularized Amendment, citing to *Harmon v. Markus*, 412 F. App'x 420 (2d Cir. 2011). However, *Harmon* is limited to claims for substantive due process, only, and does not bar claims for violation of procedural due process, as is the case, here. *See, Nicholas v. Bratton*, 376 F.Supp.3d 232, 281 and 287 (S.D.N.Y. 2019), in which the Court considered and found in the plaintiff's favor on the procedural due process claims, but granted summary judgment to the defendants on the substantive due process claims.

Contrary to the Governor further argument, Plaintiffs need not be the owner of the security deposit to assert a protected property right in the continued availability of security funds. In *Local 342, Pub. Serv. Employees v. Town Bd.*, 31 F.3d 1191 (2d Cir. 1994), the Court adopted the holding in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), to permit the elevation of

certain contract rights to the "level of a protectible entitlement."

Security deposits are held for the benefit of the landlord and are intended for the express purpose of protecting the landlord from wrongful conduct of the tenant. As such, Plaintiffs had a "legitimate claim of entitlement" to the security deposits and a right to evict tenants that do not pay rent, sufficient to trigger Plaintiffs' Due Process Rights.

Cases cited by the Governor are inapposite. This is not a question of "rate of return" for purposes of a Taking, as was the case in *Fed. Home Loan Mtge. Corp. v. New York State DHCR*, 83 F.3d 45 (2dCir. 1996) and like decisions cited by the Governor. *See*, Defendant's MOL, p. 23.

The Governor's position that Plaintiffs may immediately commence proceedings against tenants who do not fall within the ambit of the Order and will be permitted to do so against all other tenants as of August 20, 2020, is insufficient and disingenuous. *See, also,* Reply Declaration of Mark A. Guterman, Esq. The *Amici* applaud the Order for having protecting a vast class of tenants who are, in the *Amici's* view, subject to immediate eviction. Had significant numbers of tenants not been affected by the pandemic, the *Amici* would not have felt the need to be heard and, daresay, the Governor would not have felt compelled to issue the Order, in the first instance. Given that the moratorium is not driven by the same metrics and science that guided the phased re-opening of New York's economy, it is clear that the Governor might yet extend the moratorium beyond August 20, if faced with significant political pressure.

The *Amici* reliance upon *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124 (1978) is unavailing. Plaintiffs do not ask this Court to impose its - - or Plaintiffs' - - economic views. However, the Order's facial invalidity, based upon New York law, gives more than sufficient grounds upon which to invalidate the Order. Such an Order is not entitled to any of the

deference referenced by the Supreme Court.

Remarkably, the *Amici* argue that the Plaintiffs received an "immediate economic benefit" by applying the security deposit to rent arrears. This argument presumes that the Plaintiffs or any other landlord, would prefer to use security deposits as rent, thereby removing the deposit from its intended purpose. The Governor cannot rewrite leases by deciding which of landlords' interests are more important.

It bears repeating that there is no evidence of any kind that the lifting of the moratorium would result in mass evictions. The only viable solution is to permit the Courts to hear eviction cases and grant appropriate relief. By contrast, the Governor's moratorium necessarily tramples on the rights of the Plaintiffs in favor of a perceived, but unproved, assumption, spurred on by political motivations.

The holding in *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988) does not support the Governor. *See*, Defendant's MOL, p. 24. The federal courts have long accepted that New York's summary proceedings are designed to expeditiously determine the rights of the parties. In *Glen 6 Assoc. v. Dedaj*, 770 F.Supp. 225, 226 (S.D.N.Y. 1991)(which recognized that New York's eviction process is a "statutory device designed to achieve simple, expeditious and inexpensive resolution of disputes over the right to possession of real property.") *See, also, Matter of Brusco v. Braun,* 84 N.Y.2d 674, 681 (1994)(holding that tenants are protected by the procedural safeguards of summary proceedings, including the continuing jurisdiction of the Court, even after Judgment has issued). The nature of a summary proceeding is such that what might be considered a short delay amount to significant prejudice to landlords, with each month representing 8.33% of the total rent due. The eviction moratorium has already lasted four

months' rent [33.32%] and extension to August will implicate a full 50% of that rent.

Based upon the above, Plaintiffs are entitled to the relief sought herein upon the Governor's violation of their Due Process Rights.

## THE GOVERNOR'S ORDER IS NOT PROTECTED
## BY THE ELEVENTH AMENDMENT

On his opposition brief and cross-motion for summary judgment, the Governor does not address the Order's inherent violation of Executive Law 29-a or violation of New York's separation of powers, to accomplish *ultra vires* acts. Instead, the Governor incorrectly argues that the Order is immune from challenge by virtue of the Eleventh Amendment and New York's sovereign immunity.

The Supreme Court rejected that notion in *ex parte Young*, 209 U.S. 123 (1908), which permitted actions against a state official in the form of prospective relief for a violation of federal law. *See, Verizon Maryland Inc. v. Public Service Commission*, 535 U.S. 635, (2002). In *Papasan v. Allain*, 478 U.S. 265, 278 (1986), the Supreme Court ruled that "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." Rather, the test is in the "substance rather than to the form of the relief sought . . .." *Papasan*, 478 U.S. at 279. *See, also, Green v. Mansour*, 474 U.S. 64, 68 (1985)("Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law."). In *Va. Office for Protection v. Stewart*, 563 U.S. 247, 255 (2011), the Supreme Court, in reliance upon *ex parte Young*, stated that "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law

and seeks relief properly characterized as prospective.'" [cites omitted]. Here, by seeking

injunctive and declaratory relief against the further implementation of the Order, and future

similar Orders, Plaintiffs' Complaint falls squarely within the ambit of *ex parte Young*. *See,*

*Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635, 645 (2002).

The Governor's reliance upon *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,

103-06 (1984) is misplaced. In *Pennhurst*, the Supreme Court recognized that the Eleventh

Amendment did not constitute a complete bar on the use of federal courts in actions against a

State by one of its citizens. The Court reasoned that suits that challenged the "constitutionality of

a state official's action is not one against the State." Such unconstitutional act is "'void' and

therefore does not 'impart to [the officer] any immunity from responsibility to the supreme

authority of the United States.'" *Pennhurst*, 465 U.S. at 102, *quoting, ex parte Young*, 209 U.S.

123, 160 (1908)(bracket insertion in *Pennhurst*). *See, Nat'l R.R. Passenger Corp. v. McDonald*,

978 F. Supp.2d 215, 228 (S.D.N.Y. 2013)(Exception to Eleventh Amendment bar where the

action is against a state official "for actions that either exceed the official's statutory authority or

are unconstitutional.")

In *Lowrance v. Coughlin*, 862 F. Supp. 1090 (S.D.N.Y. 1994), the Court ruled that a state

officer acting "contrary to federal law, acts without authority and therefore . . . does not act in a

representative capacity." As such, the Governor is properly named in this action. *See, Eng v.*

*Coughlin*, 858 F.l2d 889, 896 (2d Cir.1988).

In *Local 851 v. Haniel Logistics, Inc.*, 90 F.Supp.2d 237, 243 (E.D.N.Y. 2000), the Court

recognized that state officers who act *ultra vires* are not immune from suit under the Eleventh

Amendment. This requires a showing that the state officer acted "without statutory authority or

under color of an unconstitutional statue." Here, the Plaintiffs have established that the Order was issued without authority, in that issuance of the Order pursuant to Executive Law 29-a was *ultra vires*, under New York law and that the Order exceeded the grant of power in Executive Law, in any event.

In this action, Plaintiffs seek injunctive relief against the Order and continued similar conduct. That relief is specifically directed at the Governor's attempt to use Executive Law 29-a as the basis of any moratorium directed against eviction proceedings and to improperly divert security deposits for the unilateral use of the tenants to pay rent arrears. To the extent that the time has already passed since the Order was issued, no relief could be obtained and is not sought herein. This action only seeks relief prospectively, to bar enforcement of the Order hereinafter, thereby including any future attempts by the Governor to extend the moratorium or to issue any similar bar.

Contrary to the Governor's argument, this action is not dependant upon the illegality of the Order under New York law, although that illegality certainly remains and taints the core of the Order. The Order would remain unconstitutional as a Taking even if its adoption had been proper under New York law. As demonstrated by the *Amici* in their preliminary statement, the broad relief that is required by tenants in the State conclusively evidences that the issue of rent payments and evictions is a State-wide issue that presents a need for significant State action. Rather than addressing the State-wide need for assistance, the Governor unilaterally and singlehandedly placed upon landlords and owners the sole responsibility of shouldering this burden. The fact that the Order was issued in derogation of State law only compounds the constitutional violation and opens the Governor to additional claims.

-16-

## CONCLUSION

Based upon the above, the Plaintiffs respectfully prays that this Court enter an Order:

(a) granting summary judgment in Plaintiffs' favor; (b) denying the Defendant's cross-motion for summary judgment; and, (c) granting such additional and further relief in Plaintiffs' favor as is just and proper.

Dated:      White Plains, New York
              June 23, 2020

LEHRMAN, LEHRMAN & GUTERMAN, LLP
Attorneys for Plaintiff
199 Main Street, Suite 400
White Plains, New York   10601
(914)   761-4488
By:   Mark A. Guterman, Esq.
MGuterman@llg-llp.com